HIGGINBOTHAM, J.
In this appeal, DM, the biological father of Baby A, challenges the trial court's denial of his opposition to Baby A's adoption, finding that he failed to carry his burden of proof to establish his parental rights under La. Ch. Code art. 1138.
FACTS AND PROCEDURAL HISTORY
DM candidly acknowledged that he has struggled with drug addiction since he was 18 years old. In 2014, DM attended Right *1184 Steps Treatment Center for his addiction to synthetic marijuana. After the death of his grandfather in 2015, DM relapsed and began using methamphetamines. On June 21, 2015, DM was arrested for possession of methamphetamines in Calcasieu Parish, and as a consequence, DM reentered drug treatment at Woodlake Addiction Recovery in Ethel, Louisiana. After completion of this drug treatment program, DM lived in a sober living community, where he used heroin for the first time. He then returned to treatment at Woodlake, completed the program, and upon release suffered a heroin relapse. In early 2016, he began treatment at Woodlake in Ethel again and afterward entered into intensive outpatient rehabilitation at Woodlake in Baton Rouge, Louisiana. While at Woodlake, in April 2016, DM met LA, the biological mother of Baby A, and they began a romantic relationship.
Within a few weeks of their relationship, LA informed DM that she was pregnant and that he might be the father. DM expressed to LA that if he was the father, he wanted to raise the baby and did not want to put the baby up for adoption. Early in LA's pregnancy, DM provided transportation to LA for her pre-natal appointments, and purchased anti-nausea medicine and pre-natal vitamins for her. On several occasions DM encouraged LA, who continued to struggle with addiction, to enter a drug rehabilitation program. During that time, DM and LA lived together for a few weeks, and DM took care of LA's three-year-old daughter. For a short time, DM was employed with an asphalt plant, but was eventually fired. LA acknowledged that DM took care of her pregnancy more then she took care of her pregnancy.
Unfortunately, DM again relapsed and entered Woodlake in Ethel at the end of July. He was there only a short time, but re-entered Woodlake at the end of August and was there through most of September. During his time at Woodlake, DM was unable to communicate with LA and was unable to continue to provide support for LA. After leaving Woodlake, DM purchased drugs from a dealer, and used them with LA. DM admitted that he and LA used drugs together while she was pregnant, but he said it was less than 15 times.
On November 25, 2016, DM was arrested for highway obstruction, and while in jail was served with a warrant for felony theft because he had stolen a ring from his mother in order to pawn it. As a result of the theft charges, he was ordered to a pretrial diversion program at Teen Challenge Rehabilitation. He was there for less than a month, and left because he did not feel it was working. After leaving Teen Challenge, DM admitted to using marijuana. In December 2016, DM began another rehabilitation program at Freedom Ministries, which is a year-long program.
On January 17, 2017, LA filed a notice of intent to surrender the child for adoption to the St. Elizabeth Foundation. In her notice, LA listed two alleged fathers, DM and JL. On January 30, 2017, the minor child Baby A was born. On February 1, 2017, DM filed an objection to the adoption and on March 27, 2017, filed a petition for visitation pending the opposition hearing, and to appoint an attorney to represent the child.
The matter came before the trial court on May 4, 2017. At the conclusion of the evidence submitted by DM, counsel for St. Elizabeth moved for an involuntary dismissal pursuant to La. Code Civ. P. art. 1672(B). The trial court concluded that DM failed to carry his burden of proof under La. Ch. Code art. 1138, and granted St. Elizabeth's motion for involuntary dismissal.
At the time of trial, DM had continued living at Freedom Ministries for approximately five months and was scheduled to *1185 leave in December 2017. While at Freedom Ministries, DM took classes in behavior modification, anger management, and enrolled to begin parenting classes. He has also been involved in Bible study and regularly attends church. DM testified that this is the best he has ever done in his addiction recovery.
LAW AND ANALYSIS
In Lehr v. Robertson , 463 U.S. 248, 261-262, 103 S.Ct. 2985, 2993, 77 L.Ed.2d 614 (1983), the United States Supreme Court held that an unwed father who "demonstrates a full commitment to the responsibilities of parenthood" and "grasps that opportunity and accepts some measure of responsibility for the child's future," acquires substantial protection under the Due Process Clause of the United States Constitution. A mere biological link is insufficient; that link must be combined with a substantial parent-child relationship. In Adoption of B.G.S., 556 So.2d 545, 550 (La. 1990), the Louisiana Supreme Court explained, "[T]he mere existence of a biological link and fitness will not sustain the father's interest; it is defeasible if not preserved by dedicated, opportune fatherly action."
Our supreme court stated in B.G.S. : "Adoption in Louisiana is a creature of statute, and the ultimate responsibility for establishing the necessary procedures to effect adoptions belongs to the Legislature." B.G.S., 556 So.2d at 556. The Louisiana Legislature has codified in Children's Code article 1138(A) the requirements for an unwed father to establish his parental rights. He must acknowledge that he is the father, prove that he has manifested a substantial commitment to his parental responsibilities, and prove that he is a fit parent of his child. The Legislature has further delineated the requirements to prove substantial commitment and fitness. Article 1138(B) sets forth three elements that must be proven: 1) support; 2) visitation; and 3) ability to care for the child.
According to Article 1138(B), proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:
(1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.
(2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.
"Parental fitness" is defined in Children's Code article 1103(5), providing that:
"Parental fitness" means:
(a) That a parent has not abused the child....
(b) That a parent has consistently offered to provide reasonably necessary food, clothing, appropriate shelter, or treatment for the child....
(c) That a parent suffers from no medical or emotional illness, mental deficiency, behavior or conduct disorder, severe physical disability, substance abuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at *1186 the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior.
(d) Viewed in its entirety, the parent's past or present conduct, including his criminal convictions, would not pose a risk of substantial harm to the physical, mental, or emotional health of the child.
A court of appeal may not set aside a trial court's findings of fact in the absence of manifest error, which in its simplest terms means "clearly wrong." Where there is conflicting testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even when the appellate court may feel that its own evaluations and inferences are as reasonable as those of the trial court. Where there are two permissible views of the evidence, the fact-finder's choice between them cannot be manifestly erroneous or clearly wrong. Rosell v. ESCO , 549 So.2d 840, 844 (La. 1989).
We first address DM's second assignment of error in which DM contends that the trial court committed legal error in determining that La. Ch. Code art. 1138(B)(1) requires a father to prove he is capable of taking immediate legal and physical care of his child. As part of proving substantial commitment to his parental responsibilities, Article 1138(B)(1) requires the father to show "he is now willing and able to assume legal and physical care of the child." The father has the burden of showing his own commitment to his parental responsibilities, not the commitment of his family. See In re Adoption of EHM , 2000-2705 (La. App. 1st Cir. 12/15/00), 808 So.2d 397, 402. Additionally, the statute defining parental fitness provides that the parent should suffer from no substance abuse or chemical dependency that makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future, based upon an established pattern of behavior. See La. Ch. Code art. 1103(5)(c).
In the trial court's written reasons for judgment, the trial court opined that DM is not "... able to assume legal and physical care of the child" under Article 1138, because DM resides in a court-ordered drug rehabilitation program and is not scheduled to complete this program until December of 2017. The trial court also pointed out that it was unclear what the consequences would be for DM in regards to his criminal charges if he failed to complete the current program. The trial court noted that it must only consider DM's commitment to Baby A and his ability to assume custody-not the ability and willingness of DM's mother to care for the child. We cannot find legal error by the trial court in considering as part of its reasoning that DM would not now or in the reasonably near future be able to assume custody of Baby A.
In his remaining assignments of error, DM contends that the trial court erred in concluding that DM did not carry his burden of proving that he demonstrated a substantial commitment to his parental responsibility, and in finding that DM was not a fit parent, when it failed to apply the test for parental fitness as required by Children's Code article 1103(5).
Under Children's Code article 1138 it is clear that the unwed father has the burden of proof. Article 1138(A) states: "At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child." (Emphasis added.)
*1187 It was obvious throughout the testimony of DM and LA that DM wanted to support LA during her pregnancy. The trial court acknowledged that "[DM] had in fact provided some support to the mother during periods of her pregnancy." DM took an active role early in LA's prenatal care, by providing her with medication, taking her to doctor's appointments, and supporting her emotionally. However, his struggle with addiction continued to prevent him from being fully supportive. After he continuously relapsed on drugs, DM spent much of LA's pregnancy in rehabilitation facilities where he was unable to provide financial or emotional support, and he was in a pretrial diversion rehabilitation facility at the time of Baby A's birth. Additionally, although DM encouraged LA to seek help for her addiction, he also provided drugs to her while she was pregnant, and used drugs with her on several occasions during this period.
Although not directly referencing Children's Code article 1103(5), the trial court clearly considered DM's parental fitness. Specifically, the trial court considered the definition of parental fitness provided in article 1103(5) which states parental fitness means "that a parent suffers from no ... substance abuse, or chemical dependency which makes him unable or unwilling to provide an adequate permanent home for the child at the present time or in the reasonably near future based upon expert opinion or based upon an established pattern of behavior." The trial court pointed out that DM's behavior, especially purchasing drugs for LM during her pregnancy and using with her, "calls his fitness as a parent into serious question." The trial court also considered the statement of the attorney appointed to represent Baby A, who noted that she wishes DM would have seized the opportunity to be a father immediately when he found out LM was pregnant rather than continuing to use drugs. She stated "I certainly don't want to fault him for being an addict. I-believe he cares. I just-I [find] trouble agreeing that he meets the present fitness element."
While we strongly commend DM on his continuous efforts toward sustaining sobriety, we cannot conclude that the trial court was clearly wrong in finding DM failed to meet his burden of proving that he has manifested a substantial commitment to his parental responsibilities, and he is a fit parent of Baby A. DM has a long history of addiction, has unresolved criminal charges, and has been unable to consistently work. Very problematic is that DM provided drugs to LA while she was pregnant, which could have caused injury to the unborn child, and he has repeatedly been unsuccessful in his attempts to stay sober, even with full knowledge of LA's pregnancy.
This is an extraordinarily difficult case because DM is clearly a good young man who wants to improve, and wants to be involved in his child's life, but he has a serious drug problem which continues to prevent him from being able to take custody and provide support and care for this child. In light of the record reviewed in its entirety, and the law which applies in this case, we can find no manifest error in the trial court's decision to terminate DM's parental rights.
CONCLUSION
For the foregoing reasons, the judgment of the trial court terminating the parental rights of DM is affirmed. All costs of the proceedings are assessed to appellant, DM.
AFFIRMED.