**NOT DESIGNATED FOR PUBLICATION**

**STATE OF LOUISIANA**

**COURT OF APPEAL**

**FIRST CIRCUIT**

**2021 CJ 1359**

**STATE OF LOUISIANA IN THE INTEREST OF B.B.M.**

Judgment Rendered: **JUN 1 6 2022**

\* \* \* \* \* \*

On Appeal from the Juvenile Court
In and for the Parish of East Baton Rouge
State of Louisiana
Docket No. AD11182

Honorable Gail A. Grover, Judge Presiding

\* \* \* \* \* \*

| | |
|---|---|
| Hillar C. Moore, III<br>District Attorney<br>Otha Nelson<br>Assistant District Attorney<br>Baton Rouge, Louisiana | Counsel for Plaintiff/Appellee<br>State of Louisiana |
| Jennifer Guillot Womble<br>Metairie, Louisiana | Counsel for Plaintiffs/Appellees<br>K.V. and H.J. |
| Etta Kay Hearn<br>Baton Rouge, Louisiana | Counsel for Defendant/Appellant<br>B.B.M., Minor Child |
| ReAzalia Z. Allen<br>Baton Rouge, Louisiana | *Ad Hoc* Counsel for Defendant/Appellee<br>J.A. |

\* \* \* \* \* \*

**BEFORE: McCLENDON, WELCH, AND THERIOT, JJ.**

**McCLENDON, J.**

In this termination of parental rights proceeding, counsel for the minor child B.B.M.[1] appeals the denial of a motion for new trial. For the reasons that follow, we affirm.

## FACTS AND PROCEDURAL HISTORY

The minor child, B.B.M., was born on August 27, 2020. On September 1, 2020, B.B.M.'s mother, M.M., executed a voluntary act of surrender in favor of a prospective adoptive married couple, K.V. and H.J. The prospective adoptive parents filed an application seeking court approval of their home as an adoptive placement for B.B.M. on September 22, 2020. On October 5, 2020, the trial court approved M.M.'s voluntary act of surrender and the placement of B.B.M. with the prospective adoptive parents.

A curator was appointed to represent and locate B.B.M.'s father, J.A. The curator's March 22, 2021 return documented that J.A. received notice of the surrender on March 16, 2021, and had been informed that if he did not object to the adoption within fifteen days, by March 31, 2021, his rights as B.B.M.'s father would be terminated. The prospective adoptive parents filed a motion to terminate J.A.'s parental rights, as well as the rights of any other unknown or unnamed father, on April 5, 2021. J.A. filed a notice of opposition to the adoption on the same day. On April 8, 2021, the trial court ordered J.A. to show cause on April 23, 2021, why his opposition should not be dismissed. During the April 23, 2021 hearing, Attorney Etta Kay Hearn was appointed to represent B.B.M. in accordance with LSA-Ch.C. art. 1137(B).[2] Further, J.A. requested a continuance in order to obtain an attorney and a paternity test. The hearing was continued to June 18, 2021.

J.A. did not appear at the June 18, 2021, hearing.[3] Thus, counsel for the prospective adoptive parents requested that J.A.'s opposition be deemed dismissed and

---

[1] In order to protect the identity of the child in this confidential proceeding, we refer to the child and all parties by their initials. See Uniform Rules—Courts of Appeal, Rule 5-2.

[2] Louisiana Children's Code art. 1137(B) provides in part that "[u]pon receipt of the [father's] notice of opposition, the court shall appoint an attorney to represent the child."

[3] The June 18, 2021 transcript reflects that the trial court and the parties present confirmed that J.A. had received notice of the trial date, but was not present in the courthouse.

his rights be terminated. The trial court asked Ms. Hearn whether she wished to be heard on the prospective adoptive parents' request, and Ms. Hearn replied affirmatively. Ms. Hearn then addressed a pleading she filed that morning, captioned "Response on Behalf of the Minor Child Regarding Adoption, Request for Hearing, and Request for Time to Secure Witnesses and Retain Expert for the Hearing" (Ms. Hearn's response).[4]

Ms. Hearn's response alleged that, based on her investigation into the parties and issues, she wished to retain an expert witness to testify "with respect to [B.B.M.'s] vulnerabilities, if any, and submit [their] position on issues of concern." Ms. Hearn's response reflects that her "issues of concern" were derived from the fact that B.B.M. "is a male, biracial child... [who] has been placed by his biological mother with two women who are married to each other." Further, though Ms. Hearn's response did not explicitly reference the race of the prospective adoptive parents, it did express Ms. Hearn's desire "that recognition and consideration is given as to the cultural awareness and traditions making up the minor's frame of reference," and subsequent pleadings confirm that Ms. Hearn was concerned that the prospective adoptive parents are "two women of the opposite race of the child who are married to each other."[5]

Thus, Ms. Hearn contended that, in order for the adoption to be decided based on B.B.M.'s best interests, the adoption proceeding must be examined by the court. Ms. Hearn expressed her understanding that termination of J.A.'s rights would end her appointment, but stated that she was requesting that her appointment be maintained because of her concerns regarding B.B.M.'s best interests. Ms. Hearn's response concluded with requests that she maintain her appointment as counsel for B.B.M., that she be permitted to retain an expert to assess the matter, and that the trial court hold a hearing as to why the adoption should not be granted and the child removed forthwith.

---

[4] Ms. Hearn also described her communications with J.A. Specifically, she advised that he had expressed to her that he was having difficulty obtaining legal counsel and that he did not wish to give up his parental rights.

[5] As discussed herein, Ms. Hearn filed a motion for new trial following the June 18, 2021 hearing and the trial court issued written reasons in connection therewith. Ms. Hearn's memorandum in support referred to the prospective adoptive parents as being "two women of the opposite race of the child who are married to each other." The trial court's written reasons for judgment included a specific finding of fact that "[t]he objection to the adoption by Attorney Hearn concerns the race and gender of the adoptive parents."

Counsel for the prospective adoptive parents expressed shock at Ms. Hearn's arguments. The trial court noted that Ms. Hearn's response appeared to be "the response on the adoption, not the termination of parental rights... [which is] separate." The trial court further pointed out that "under the hearing for adoption there are avenues to intervene or those other elements of an adoption hearing."

Following a status conference in chambers, the trial court denied J.A.'s opposition, terminated J.A.'s parental rights, and terminated the parental rights of any unnamed father.[6] Further, based on the termination of parental rights, the trial court relieved Ms. Hearn as counsel for B.B.M. The trial court memorialized these rulings in a June 18, 2021 judgment.[7]

On June 30, 2021, Ms. Hearn filed a motion seeking a new trial regarding the trial court's denial of her request to maintain her appointment beyond the termination of J.A.'s parental rights. The trial court denied the motion for new trial in a written judgment dated July 9, 2021. Ms. Hearn filed a motion for appeal referencing both the trial court's June 18, 2021 judgment terminating J.A.'s parental rights and the July 9, 2021 judgment denying her motion for new trial.[8] The motion for appeal also requested written reasons for the trial court's ruling therein.

The trial court issued written reasons for judgment on August 16, 2021, which identified the issues as "Whether there is any law in the Children's Code that allows for a child's attorney to remain in the case after the termination of parental rights in a private adoption" and "Whether there is any justification for Attorney Hearn to remain in this case as counsel for the minor child, B.B.M." The trial court then expressed its opinion that under the language of the governing statute, LSA-Ch.C. art. 1137, counsel

---

[6] The trial court specifically found that J.A. was properly served to appear at the hearing; that the matter had been set twice on the docket; and that J.A. had requested a paternity test which to the court's knowledge had not been initiated or completed.

[7] We note that J.A. has not appealed the judgment below. Thus, the judgment is final as it relates to the termination of his parental rights to B.B.M. See **State in Int. of M.T.**, 2019-0296 (La.App. 1 Cir. 9/27/19), 288 So.3d 209, 211, writ denied, 2019-01624 (La. 11/19/19), 282 So.3d 1064.

[8] A judgment denying a motion for new trial is an interlocutory order and is normally not appealable. See LSA-C.C.P. art. 2083(C). However, when a motion for appeal refers by date to the judgment denying a motion for new trial, but the circumstances indicate that the appellant actually intended to appeal from the final judgment on the merits, the appeal should be maintained as being taken from the judgment on the merits. **Succession of Simms**, 2019-0936 (La.App. 1 Cir. 2/21/20), 297 So.3d 110, 114. Here, the motion for appeal referred by date to both the judgment underlying the motion for new trial and the judgment denying the motion for new trial. Thus, it is clear that Ms. Hearn sought an appeal from the June 18, 2021 judgment, and prior interlocutory rulings, and we proceed accordingly.

for the child is necessary and appointed on the basis of the father's opposition; however, "[after] the trial on the opposition is completed and a father's parental rights are terminated, the matter is no longer 'contested' at that point, thus there is no necessity for the child to be represented." The trial court concluded that there were no grounds warranting the continued appointment of Ms. Hearn on behalf of B.B.M. The trial court also pointed out that a petition for adoption had not yet been filed, "thus the adopting parents are currently waiting for the requisite time period to pass to allow them to file a petition for adoption." Consequently, "[a]ll issues concerning the surrender of B.B.M., for adoption have been disposed of, thus eliminating the need for an attorney for the child."

## APPELLATE JURISDICTION

As an appellate court, we have the duty to examine our subject matter jurisdiction and to determine *sua sponte* whether such subject matter jurisdiction exists, even when the issue is not raised by the litigants. **Marrero v. I. Manheim Auctions, Inc.,** 2019-0365 (La.App. 1 Cir. 11/19/19), 291 So.3d 236, 238. An appellant's failure to timely file a devolutive appeal is a jurisdictional defect, in that neither the court of appeal nor any other court has the jurisdictional power and authority to reverse, revise, or modify a final judgment after the time for filing a devolutive appeal has elapsed. **CWI Holdings, LLC v. Robertson Development, L.L.C.,** 2021-0569 (La.App. 1 Cir. 12/22/21), --- So.3d ---, ---, 2021 WL 6065806, *2.

Upon review of the record initially before us on appeal, we noted that we were unable to determine the timeliness of this appeal, because we were unable to determine the date that notice of the June 18, 2021 judgment terminating parental rights was mailed to Ms. Hearn.[9] Thus, on February 25, 2022, this Court issued a

---

[9] Appeals regarding the termination of parental rights are governed by LSA-Ch.C. art. 332. **State ex rel. C.P.,** 2000-2703 (La. 1/17/01), 777 So.2d 470, 471. Under Article 332, the delays for applying for a new trial or for appeal commence to run from the date of the mailing of notice of judgment. Article 332 further requires that notice of judgment "be as provided in Code of Civil Procedure Article 1913." Article 1913(A) requires notice of the signing of a final judgment to be mailed by the Clerk of Court to the counsel of record for each party, and to each party not represented by counsel, in all contested cases. Article 1913(D) further mandates that the Clerk of Court "file a certificate in the record showing the date on which, and the counsel and parties to whom, notice of the signing of the judgment was mailed."

In this matter, the Clerk of Court's "Certificate of Service" reflects that notice of the June 18, 2021 judgment terminating parental rights was mailed on June 24, 2021. Excluding legal holidays, the time period for applying for a new trial expired on Tuesday, June 29, 2021. Ms. Hearn's motion for new trial was filed on Wednesday, June 30, 2021, and thus appears to be untimely. Further, because Ms.

5

limited remand of this matter for the sole purpose of ordering the trial court to hold a hearing to determine the date on which notice of the June 18, 2021 judgment was mailed to Ms. Hearn and to supplement the appellate record subsequent to the hearing. On May 11, 2022, the record was supplemented with the transcript of a March 21, 2022 hearing. At the conclusion of the hearing, the trial court found that it was "unable to determine that indeed a date of notice was mailed to Ms. Hearn and that there is no certificate of service showing that that document was mailed at all." When there is uncertainty as to the date of the notice of judgment, any doubt must be resolved in favor of the right to appeal. **Dobyns v. University of Louisiana System**, 2018-0811 (La.App. 1 Cir. 4/12/19), 275 So.3d 911, 919, writ denied, 2019-00950 (La. 9/24/19), 278 So.3d 977. Accordingly, we maintain the appeal. See **Bell v. Demax Management Inc.**, 2002-0618 (La. 5/24/02), 819 So.2d 293.

## STANDARD OF REVIEW

The issue before this Court on appeal is purely one of statutory interpretation. Thus, we review this matter *de novo*, without deference to the legal conclusions of the courts below. **Turner v. Willis Knighton Medical Center**, 2012-0703 (La. 12/4/12), 108 So.3d 60, 62.

## LAW AND DISCUSSION

Ms. Hearn raises two assignments of error on appeal. First, she argues that the trial court erred in denying her request for a hearing regarding whether the proposed adoption is in B.B.M.'s best interests. Second, she contends that the trial court erred in relieving her of her appointment as counsel for B.B.M. Ms. Hearn maintains that these rulings conflict with applicable law, particularly LSA-Ch.C. art. 1137. In response, the prospective adoptive parents contend that because Ms. Hearn was initially appointed as counsel for B.B.M. pursuant to Article 1137 based upon J.A.'s opposition to the proposed adoption, there was no authority for the hearing Ms. Hearn requested or for Ms. Hearn's appointment as B.B.M.'s counsel once J.A.'s rights were terminated. Having

Hearn's motion for appeal was not filed until July 22, 2021, twenty-eight days after the mailing of the notice of judgment, the timeliness of the appeal is contingent on the timeliness of that motion for new trial. However, while the Certificate appears directly below text requesting service on J.A. and counsel for the adoptive parents, there is no text requesting service on Ms. Hearn.

6

carefully considered the law and arguments of counsel, we find that the trial court did not err in denying Ms. Hearn's requests. Ms. Hearn's response and the requests set forth therein addressed issues that were not before the trial court, and therefore, exceeded the scope of the hearing.

As set forth above, the proceedings underlying this appeal commenced with M.M.'s voluntary surrender of her parental rights to B.B.M. for the purpose of freeing B.B.M. for private adoption. Title XI of the Children's Code provides the exclusive means by which a parent can voluntarily surrender parental rights to a child for the ultimate purpose of adoption. LSA-Ch. C. art. 1101. The general procedures for the surrender of parental rights are set forth in Title XI, Chapter 10, Article 1130, *et seq.* (surrender procedure articles). Further, pursuant to LSA-Ch.C. art. 1224(B) and (C), the surrender procedure articles also apply in the context of a mother's surrender of parental rights for the purpose of private adoption when, as here, the parental rights of an alleged or adjudicated father have not been terminated. See LSA-Ch.C. art. 1224(B) ("Except when waived, notice of the filing of the petition shall be served on any parent whose parental rights have not been terminated by a court of competent jurisdiction") and LSA-Ch.C. art. 1224(C) ("If the adoption petition names an alleged or adjudicated father and his parental rights have not been terminated by a court of competent jurisdiction, he shall be served with notice of the filing of the petition in accordance with Articles 1133, 1134, and 1136 and thereafter, his rights shall be determined in accordance with the provisions of Articles 1137 through 1143").

Pursuant to Article 1132(A), if a mother of a child born outside of marriage has executed a surrender and identified the child's alleged or adjudicated father (the unwed father), an attempt must be made to locate the unwed father and to offer pre-surrender counseling. Article 1137(A) provides that the unwed father may file an opposition to the proposed adoption. Upon receipt of an unwed father's opposition, pursuant to Article 1137(B), "the court shall appoint an attorney to represent the child .... [and] [neither] the child nor anyone purporting to act on his behalf may be permitted to waive this right." Further, pursuant to Article 1137(C), the opposition shall be set for a contradictory hearing within twenty days.

7

The hearing of the unwed father's opposition is addressed in LSA-Ch.C. art. 1138. At the hearing, the unwed father bears the burden of proving, by a preponderance of the evidence, that his parental rights should be recognized. LSA-Ch.C. art. 1138(A); **In re Baby A**, 2017-1282 (La.App. 1 Cir. 1/9/18), 241 So.3d 1182, 1186; **In re A.S.**, 2015-0762 (La.App. 1 Cir. 9/18/15), 181 So.3d 106, 109. Article 1138 provides in full:

> A. At the hearing of the opposition, the alleged or adjudicated father must establish his parental rights by acknowledging that he is the father of the child and by proving that he has manifested a substantial commitment to his parental responsibilities and that he is a fit parent of his child.

> B. Proof of the father's substantial commitment to his parental responsibilities requires a showing, in accordance with his means and knowledge of the mother's pregnancy or the child's birth, that he either:

> (1) Provided financial support, including but not limited to the payment of consistent support to the mother during her pregnancy, contributions to the payment of the medical expenses of pregnancy and birth, or contributions of consistent support of the child after birth; that he frequently and consistently visited the child after birth; and that he is now willing and able to assume legal and physical care of the child.

> (2) Was willing to provide such support and to visit the child and that he made reasonable attempts to manifest such a parental commitment, but was thwarted in his efforts by the mother or her agents, and that he is now willing and able to assume legal and physical care of the child.

> C. The child, the mother of the child, and the legal custodian may offer rebuttal evidence limited to the issues enumerated in Paragraphs A and B of this Article. However, the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child.

> D. If the court finds that the alleged or adjudicated father has failed to establish his parental rights, it shall decree that his rights are terminated.

> E. If the court finds that the alleged or adjudicated father has established his parental rights, the court shall declare that no adoption may be granted without his consent. The court may also order the alleged or adjudicated father to reimburse the department, or the licensed private adoption agency, or other agency, or whoever has assumed liability for such costs, all or part of the medical expenses incurred for the mother and the child in connection with the birth of the child.

In order to establish his parental rights, LSA-Ch.C. art. 1138(A) requires that the unwed father acknowledge that he is the father, prove that he has manifested a substantial commitment to his parental responsibilities, and prove that he is a fit parent of his child. **In re Baby A**, 241 So.3d at 1186; **In re A.S.**, 181 So.3d at 109. To prove

substantial commitment and fitness, Article 1138(B) requires that the unwed father prove three elements: 1) support; 2) visitation; and 3) ability to care for the child. **In re Baby A**, 241 So.3d at 1185. Article 1138(C) provides that the child, the mother, and the legal custodian may offer rebuttal evidence to the unwed father's opposition; however, this rebuttal evidence is limited to the issues enumerated in Article 1138(A) and (B). If the trial court finds that the unwed father has failed to establish his parental rights, Article 1138(D) directs the trial court to decree that the father's rights are terminated; if the unwed father successfully establishes his parental rights, Article 1138(E) directs the court to declare that no adoption may be granted without his consent.[10]

In this matter, J.A.'s opposition to the adoption triggered Ms. Hearn's appointment to represent B.B.M. pursuant to Article 1137(B), and the June 18, 2021 hearing was set pursuant to Articles 1137 and 1138 for the purpose of providing J.A. with an opportunity to establish his parental rights. Pertinent to this appeal, the surrender procedure articles do not further address the role of counsel appointed for the minor child or the adoption process.

At the hearing, Ms. Hearn argued that she should maintain her appointment as B.B.M.'s counsel and that the trial court should hold a hearing to determine whether the proposed private adoption was in B.B.M.'s best interests. However, these requests exceeded the scope of the issues before the court. Article 1138 governs the opposition hearing and does not contemplate the determination of any issues other than whether the unwed father can establish his parental rights; to the contrary, Article 1138(C) limits the rebuttal evidence that the child, the mother, or the legal custodian may offer to "the issues enumerated in Paragraphs A and B of this Article," which concern only the requirements for the unwed father to establish his parental rights. Thus, the issue before the trial court was not the determination of whether the proposed adoption was

---

[10] If the court maintains an opposition and declares that no adoption can take place without the consent of the opposing parent, a surrender executed by the other parent of the child shall be dissolved, and any dispute regarding custody shall be heard immediately and determined pursuant to Civil Code Article 245. LSA-Ch. C. art. 1139(A).

9

in B.B.M.'s best interests, but rather whether the termination of J.A.'s parental rights was in B.B.M.'s best interests.

Moreover, the provisions of law governing adoption are set forth in Title XII, and private adoptions are addressed in Chapter 10 of Title XII, Article 1221, *et seq.* (private adoption articles). The private adoption articles specifically provide for intervention in a private adoption proceeding by an individual found to be a party in interest, for the purpose of presenting evidence as to the best interests of the child. See LSA-Ch. C. art. 1231. Additionally, the Louisiana Department of Children and Family Services (the Department) is required to investigate a proposed private adoption and submit a confidential report of its findings to the trial court, including, *inter alia*, factors regarding the suitability of the child for adoption in the proposed adoptive home and the conditions of the proposed adoptive home with respect to the health, adjustment, and other advantages or disadvantages to the child. See LSA-Ch. C. art. 1229. The trial court is required to consider, *inter alia*, the Department's findings, as well as any motion to intervene, when hearing the petition for adoption. See LSA-Ch. C. art. 1230.

While we note Ms. Hearn's argument that Article 1137(B) precludes the child or anyone purporting to act on the child's behalf from waiving the child's right to counsel, we do not find that the trial court's ruling relieving Ms. Hearn of her appointment constituted a waiver of B.B.M.'s right to counsel. Ms. Hearn was present at the opposition hearing, and was free to argue for or against the termination of J.A.'s parental rights. We also note Ms. Hearn's argument that Article 1138(C) provides that "the primary consideration shall be, and the court shall accept evidence concerning, the best interests of the child." However, considering this *in pari materia*, because the topic of this article and all the surrounding articles concern the surrender and termination of parental rights, we find that this pertains to whether the termination of parental rights is in the best interests of the child --not whether the proposed private adoption is in the best interests of the child. Ms. Hearn's assignments of error lack merit.

## CONCLUSION

For all of the foregoing reasons, the June 18, 2021 judgment terminating J.A.'s parental rights and denying Ms. Hearn's request to maintain her appointment as

10

counsel for B.B.M. is affirmed. Likewise, the July 9, 2021 judgment denying Ms. Hearn's motion for new trial on these issues is affirmed.

**APPEAL MAINTAINED; JUDGMENT AFFIRMED.**